## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

_____

JAMES E. LENNON, CARMELITA
A. LENNON, JAMES J. LENNON,
CINDY M. LENNON, MARK W.
PROKOP, AND JACQUELINE A.
PROKOP,

          Plaintiffs,


v.                        **MEMORANDUM OF LAW & ORDER**
                           Civil File No. 08-357 (MJD/SRN)


OVERLOOK CONDOMINIUM
ASSOCIATION, a Minnesota
non-profit corporation,

          Defendant.

_____

Chad D. Lemmons, Kelly & Fawcett, PA, Counsel for Plaintiffs.

John J. Gores, Gores Law Office, Counsel for Defendant.

_____


## I.    INTRODUCTION

This matter is before the Court on cross motions.  Defendant has filed a

Motion to Dismiss [Docket No. 2], asking the Court to dismiss Plaintiffs' § 1983

claim with prejudice and remand the remaining state law claims.  Plaintiffs James

E. Lennon and Carmelita A. Lennon have filed a Motion for Judgment on the

Pleadings [Docket No. 14], seeking judgment on their § 1983 claim only.  The

Court heard oral argument on May 9, 2008.

## II.    BACKGROUND

### A.    Factual Background

#### 1.    Parties

Defendant Overlook Condominium Association ("Overlook") is a

non-profit corporation organized under Minnesota law to manage the affairs of

Overlook Condominium.

Plaintiffs James E. Lennon and Carmelita A. Lennon purport to be the life

tenants of Apartment 211 and Garage Apartment 6 and 7, Overlook

Condominium, Condominium No. 17 ("Unit 211"), located in Dakota County,

Minnesota.  Plaintiffs James J. Lennon, Cindy M. Lennon, Mark W. Prokop, and

Jacqueline A. Prokop purport to hold the remainder in Unit 211.  James E.

Lennon and Carmelita A. Lennon are the parents of James J. Lennon and

Jacqueline A. Prokop.

According to Plaintiffs, from October 24, 2002, until June 1, 2003, Unit 211

was owned in fee title by James J. Lennon, Cindy M. Lennon, Mark W. Prokop, and Jacqueline A. Prokop.  From June 1, 2003 to May 13, 2004, fee title in Unit 211 was held by New Liberty Investments, an entity controlled by James J. Lennon, Cindy M. Lennon, Mark W. Prokop, and Jacqueline A. Prokop.  On May 13, 2004, fee title to Unit 211 returned to James J. Lennon, Cindy M. Lennon, Mark W. Prokop, and Jacqueline A. Prokop.  In mid-July 2007, Mark W. Prokop, Jacqueline A. Prokop, James J. Lennon, and Cindy M. Lennon purport to have quit-claimed a life estate to James E. Lennon and Carmelita A. Lennon.

According to the December 4, 2007 Board Decision, James E. Lennon and Carmelita A. Lennon moved into Unit 211 and represented to Overlook that they were the owners of Unit 211, when, in fact, they were not.  (Plaintiffs purport to attach portions of the Board Decision to their Amended Complaint; however, no exhibit is attached.  Portions of the Decision were attached to the original Complaint.  Defendant has attached the Board Decision to its Answer to the Amended Complaint.)  Also according to the Board Decision, James J. Lennon and Cindy M. Lennon, leased Unit 211 to James E. Lennon and Carmelita A. Lennon.

The declaration of floor plans creating Overlook Condominium was filed

November 14, 1974, with the Office of the Registrar of Titles of Dakota County.

The declaration was amended and restated by a subsequent declaration filed

October 1, 1982.  The amended declaration included the amended bylaws

("Bylaws") governing Overlook Condominium.

Article 6.11 of Overlook's Bylaws authorizes Overlook's Board of Directors

("Board") to levy reasonable fines for violations of Overlook's rules: "The Board

of Directors may, after notice and on opportunity to be heard, levy reasonable

fines for violations of the Restated Declarations, Bylaws and Rules of Conduct of

the Association."

Eleven years after Overlook publicly filed its Amended Bylaws, the

Minnesota legislature enacted Minnesota Statute § 515B.3-102, subdivision 11, of

the Minnesota Common Interest Ownership Act, effective in 1994.  This provision

permits condominium associations to impose reasonable fines, after notice and

an opportunity to be heard.

## 2.    Fines Levied Against Plaintiffs

On November 29, 2007, the Board held a hearing to determine whether

Plaintiffs should be assessed fines for violations of the Bylaws and Rules.

Overlook asserted that James E. Lennon and Carmelita A. Lennon had violated

various Bylaws, for example by misrepresenting that they were the owners of Unit 211, resulting in James E. Lennon's improper election to the Board of Directors and appointment as president.

There was no fine schedule in place before the November 29, 2007 meeting. Thus, while the Board purportedly provided notice of the meeting to Plaintiffs, it did not provide notice of any potential fine schedule.

According to the Board Decision, James E. Lennon appeared at the start of the hearing but did not remain for the entire hearing. The Board proceeded with the hearing without James E. Lennon's presence, adopted a fine schedule, and, by a resolution dated December 4, 2007, levied fines and costs in the amount of $49,421.52 against Unit 211. On January 4, 2008, Overlook filed a lien against Unit 211 for $49,421.52.

### B.    Procedural History

On January 23, 2008, Plaintiffs provided Defendant with a Summons and Complaint, based in Dakota County District Court, State of Minnesota. The Complaint alleged five counts against Overlook – four state law claims and one federal claim, violation of 42 U.S.C. § 1983. On February 11, 2008, Overlook removed the case to this Court based on federal question jurisdiction due solely

to the claim under § 1983.

Plaintiffs' Amended Complaint was filed in this Court on March 10, 2008. Plaintiffs allege five claims against Overlook: Count One, Void Fines, alleges the fines imposed by Overlook are void and unenforceable; Count Two, Estoppel, alleges that Overlook is estopped from claiming that James E. Lennon violated any term or condition of the Bylaws by serving as a director or officer of Overlook and taking actions in that position; Count Three, Ratification, alleges that the Board ratified the actions of James E. Lennon by accepting the benefits of the contract he entered and failing to object to checks executed solely by James E. Lennon on behalf of Overlook; Count Four, Lease, alleges that James E. Lennon and Carmelita A. Lennon did not lease Unit 211, but occupied it with permission, as other family members have done in other Overlook units, and, as a result, Plaintiffs have not violated any rules regarding leasing;  and Count Five, Violation of 42 U.S.C. § 1983, alleges that Overlook violated § 1983 by denying Plaintiffs substantive and procedural due process and equal protection under state and local law.  Plaintiffs seek an order declaring that the fines levied by Overlook are void and unenforceable, declaring that the lien statement is null and void, ordering the Registrar of Titles of Dakota County to delete the lien

6

statement, and awarding costs and attorney fees.

Overlook has filed a Motion to Dismiss Count V, the § 1983 claim, and to remand the remaining claims to state court.  Plaintiffs James E. Lennon and Carmelita A. Lennon have filed a Motion for Judgment on the Pleadings on Count V to the extent that count is based on due process violations.

## III.   DISCUSSION

### A.     Standard

When reviewing a motion to dismiss, the Court takes all facts alleged in the complaint as true and grants all reasonable inferences in favor of the non-moving party.  Gilmore v. County of Douglas, Neb., 406 F.3d 935, 937 (8th Cir. 2005).  "A motion to dismiss should be granted only if it appears beyond doubt that the plaintiff can prove no set of facts to warrant a grant of relief."  Id. (citation omitted).  When deciding a motion to dismiss the Court considers "the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint."  PureChoice, Inc. v. Macke, No. 07-1290 (DWF/SRN), 2007 WL 2023568, at *5 (D. Minn. July 10, 2007) (unpublished) (citing Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th. Cir. 1999)).

The standard for reviewing a motion for judgment on the pleadings is

7

similar: "A motion for judgment on the pleadings will be granted only where the moving party has clearly established that no material issue of fact remains and the moving party is entitled to judgment as a matter of law.  In our evaluation of the motion, we accept all facts pled by the nonmoving party as true and draw all reasonable inferences from the facts in favor of the nonmovant." Waldron v. Boeing Co., 388 F.3d 591, 593 (8th Cir. 2004) (citations omitted).

**B.     Requirement for § 1983**

When bringing a section 1983 claim a plaintiff must establish (1) that he was deprived of a right secured by the Constitution or laws of the United States and (2) that the deprivation was committed under color of state law. Lugar v. Edmondson Oil Co., 457 U.S. 922, 931 (1982).  Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." Graham v. Connor, 490 U.S. 386, 393-94 (1989) (citation omitted).  Plaintiffs allege that Overlook violated their due process rights granted by the Fourteenth Amendment by levying fines.

"Private misuse of a statute by a private actor is not sufficient to state a claim under section 1983." Hassett v. Lemay Bank & Trust Co., 851 F.2d 1127, 1129 (8th Cir. 1988) (citation omitted).  Also, "allegations[] that a private party

8

acted unlawfully with respect to a constitutional state statute[] fail to state a claim

for relief." Id. at 1130 (citations omitted).

> In Lugar v. Edmondson Oil Co., the Supreme Court held that in a
> section 1983 case where a private party defendant performs an act
> ordinarily performed by private parties and it triggers action by state
> officials, the defendant's actions are committed 'under color of' state
> law if the conduct qualifies as state action under the fourteenth
> amendment.  The issue thus hinges on whether the defendant's
> conduct allegedly causing the deprivation of a federal right [is] fairly
> attributable to the State.
>
> This fair attribution test has two components: a state policy
> and a state actor.  The state policy component requires that the
> deprivation must be caused by the exercise of some right or privilege
> created by the State or by a rule of conduct imposed by the State or
> by a person for whom the State is responsible.  A state policy may be
> inferred from either a state statute, or a well-settled custom or
> practice.  The state actor component requires that the defendant
> must be a person who may fairly be said to be a state actor.  This
> may be because he is a state official, because he has acted together
> with or has obtained significant aid from state officials, or because
> his conduct is otherwise chargeable to the State.

Roudybush v. Zabel, 813 F.2d 173, 176-77 (8th Cir. 1987) (citations omitted).

> With regard to the state actor element,
>
> [t]he second element requires more than the private misuse of a state
> statute (as alleged in the taking of the personal property in this case);
> a plaintiff must show that the private party acted in concert with or
> obtained significant aid from state officials who were themselves
> involved in a constitutional violation.  Otherwise stated, there must
> be a 'meeting of the minds' or a 'mutual understanding' between a

private party and public officials to engage in conduct that violates
the plaintiff's federal rights.

Audio Odyssey, Ltd. v. Brenton First Nat'l Bank, 245 F.3d 721, 740 (8th Cir. 2001)

(citations omitted), opinion reinstated by 286 F.3d 498 (8th Cir. 2002) (en banc).

Additionally, with regard to the underlying due process constitutional

violation alleged, state action is required:

> The Due Process Clause of the Fifth Amendment to the United
> States Constitution provides that: "No person shall . . . be deprived
> of . . . property, without due process of law; . . . "  It applies to
> federal government not private action, while the fourteenth
> amendment due process clause applies to the states.  The standard
> for finding federal government action under the fifth amendment is
> the same as that for finding state action under the fourteenth
> amendment.  That standard is that there must exist "a sufficiently
> close nexus between the (government) and the challenged action of
> the regulated entity so that the action of the latter may be fairly
> treated as that of the (government) itself."

Warren v. Gov't Nat'l Mortgage Ass'n, 611 F.2d 1229, 1232 (8th Cir. 1980)

(citations omitted).

### C.      Whether Overlook Acted Under Color of State Law

#### 1.      Introduction

Overlook asserts that Plaintiffs have failed to state a claim under § 1983

because they fail to meet either element of the fair attribution test – Plaintiffs fail

to allege either a state policy or a state actor.

Plaintiffs assert two theories under which Overlook could be construed as a state actor: the public function doctrine and the in-concert doctrine.  Under the first theory, they argue that levying fines and filing liens are sovereign functions within the exclusive prerogative of the state, so the fact that Overlook took these actions makes it a state actor.  Under the second theory, Plaintiffs argue that the Dakota County Sheriff will, at some point, execute the lien, and, at that point, Overlook will be acting in concert with the state.

### 2.      State Policy

"<u>Lugar</u>'s state policy component is not met when the private party charged with an unconstitutional deprivation has allegedly acted unlawfully with respect to a constitutional state statute.  Likewise, . . . <u>Lugar</u>'s state policy component is met when the party charged with an unconstitutional deprivation has acted in conformity with an allegedly unconstitutional state statute or well-settled custom."  <u>Roudybush</u>, 813 F.2d at 177 (citations omitted).

Plaintiffs have failed to allege that Overlook deprived their rights by exercising some right or privilege created by an unconstitutional statute or rule.  Minnesota Statute § 515B.3-102, subd. 11, grants Minnesota common interest

community owners' associations the power to, "after notice and an opportunity to be heard, levy reasonable fines for violations of the declaration, bylaws, and rules and regulations of the association."  Nowhere in the Complaint or Amended Complaint do Plaintiffs allege that Minnesota Statute § 515B.3-102 is unconstitutional.  Plaintiffs have not alleged why the statute would be unconstitutional.  The statute itself provides that "reasonable fines" may be imposed "after notice and opportunity to be heard," so there is no apparent reason that the statute would be unconstitutional.  Minn. Stat. § 515B.3-102, subd. 11.

The Court concludes that Plaintiffs have failed to meet the state policy component.  In any event, even if Plaintiffs had satisfied the first element of the fair attribution test, but Plaintiffs cannot establish that Overlook is a state actor.

### 3.    Public Function Doctrine

#### a.    Standard

The public function doctrine holds that state action is "present in the exercise by a private entity of powers traditionally exclusively reserved to the State."  Jackson v. Metro. Edison Co., 419 U.S. 345, 352 (1974) (citations omitted). The Supreme Court has held the following functions are exclusively reserved to

12

the State: "the administration of elections; the operation of a company town; eminent domain; peremptory challenges in jury selection; and, in at least limited circumstances, the operation of a municipal park." <u>United Auto Workers, Local No. 5285 v. Gaston Festivals, Inc.</u>, 43 F.3d 902, 907 (4th Cir. 1995) (citations omitted). The Supreme Court has further held that the following functions are not exclusively reserved to the state: "the provision of electricity and other utilities; the operation of nursing homes; . . . the coordination and governance of college and amateur athletics," and the provision of schooling. <u>Id.</u> (citations omitted).

The fact that a state "has specifically authorized or approved" of private conduct does not create state action. <u>Jackson</u>, 419 U.S. at 354. Private misuse of a statute authorizing private action does not create state action. <u>Audio Odyssey, Ltd.</u>, 245 F.3d at 740.

### b.    Analysis

In this case, there are two powers wielded by Overlook that Plaintiffs assert are exclusively reserved to the state: the power to file a lien and the power to assess fines and penalties.

### i.    Power to Impose Fines

The Court concludes that the power to impose fines is not an exclusive state power.  It is simply not the type of power, such as eminent domain, traditionally exclusively reserved for the state.  Private entities, such as the NCAA, legislate rules and impose penalties, but are not state actors.  <u>Nat'l Collegiate Athletic Ass'n v. Tarkanian</u>, 488 U.S. 179, 183-84 (1988) (noting that NCAA legislates rules, maintains an enforcement program complete with investigative staff, and imposes penalties but is not a state actor); <u>see also Goldberg v. 400 E. Ohio Condo. Ass'n</u>, 12 F. Supp. 2d 820, 823 (N.D. Ill. 1998) ("The National Basketball Association makes rules, conducts hearings, issues decisions, and imposes fines, but it seems unlikely that the privately run sports league is a government actor.").

### ii.     Power to Impose and Enforce Liens

Plaintiffs also assert that Overlook's power to impose and enforce a lien on the unit is an exclusive state function.  The Court rejects this assertion.  <u>See, e.g.</u>, <u>Goldberg</u>, 12 F. Supp. 2d at 823 (holding that condominium association did not become state actor by virtue of its power to impose and enforce its own lien because various other private actors, such as unions and corporations, have that same power).  In Minnesota, many private entities other than condominium

14

associations have this power.  For example, mechanics, under Minnesota Statute § 514.18, and veterinarians, under § 514.93, are granted lien power.

### c.    Conclusion

The Court finds that neither the power to file liens, nor the power to assess fines is a power reserved for the state.  Both powers are exercised regularly by private entities: mechanics file liens and the NCAA assesses penalties.  <u>See</u> <u>Goldberg</u>, 12 F. Supp. 2d at 823 (rejecting argument that condominium association acted "under color of" state law because "condominium associations have powers traditionally associated with the state" such as the "power to make rules, conduct hearings, issue decisions, and **impose fines and liens**") (emphasis added).  <u>See also</u> <u>Alberto San, Inc. v. Consejo De Titulares Del Condominio San Alberto</u>, – F.3d –, 2008 WL 820883, at *2 (1st Cir. Mar. 28, 2008) (holding that "defendants in managing their condominium association were not performing a public function that has been traditionally the exclusive prerogative of the State") (citation omitted).  Furthermore, the Court rejects Plaintiffs' attempt to compare Overlook to the company town in <u>Marsh v. Alabama</u>, 326 U.S. 501 (1946), and adopts the reasoning of the court in <u>Kalian at Poconos, LLC v. Saw Creek Estates Community Ass'n, Inc.</u>, 275 F. Supp. 2d 578, 589-90 (M.D. Pa. 2003)

(distinguishing <u>Marsh</u> because, among other things, <u>Marsh</u> was a First

Amendment case, involved "an outsider who unwittingly ran afoul of some

privately-imposed rule" and involved a"corporation [that had] assumed *all* the

attributes of a state-created municipality).

### 4. Joint Participation/In Concert Doctrine

#### a. Standard

In order to succeed under the joint participation or in-concert doctrine,

plaintiffs must plead facts that show that the defendant and a state actor reached

a mutual understanding or meeting of the minds to deprive the plaintiffs of their

constitutional rights. <u>See, e.g.</u>, <u>Miller v. Compton</u>, 122 F.3d 1094, 1098 (8th Cir.

1997) ("[A] private actor[] may be liable under § 1983 only if she is a willing

participant in joint action with the State or its agents. In construing that test in

terms of the allegations necessary to survive a motion to dismiss, this circuit has

held that a plaintiff seeking to hold a private party liable under § 1983 must

allege, at the very least, that there was a mutual understanding, or a meeting of

the minds, between the private party and the state actor.") (citations omitted).

#### b. Possibility of Future Foreclosure

Plaintiffs speculate that sometime in the future, Overlook might invoke the

legal procedure for foreclosure through advertisement and then use the Dakota

County Sheriff to have Unit 211 sold by sheriff's sale.  They claim that this

possibility meets the state actor test.  This assertion is speculative and does not

appear in the Amended Complaint.  Here, Plaintiffs have not pled any mutual

understanding or meeting of the minds between Overlook and a state actor.  Cf.

Rullan v. Council of Co-owners of McKinley Court Condo., 899 F. Supp. 857, 860

(D.P.R. 1995) (dismissing § 1983 claim against condominium association when

"[t]here is not one allegation that the [association] acted as private persons jointly

engaged with state officials or that their conduct is otherwise chargeable to the

state").

### c.      Filing Lien with Dakota County

Plaintiffs also assert that the County Recorder has participated by

permitting the filing of the lien statement against Plaintiffs' property.  Plaintiffs

cite no case law supporting this proposition.  The Court rejects this argument.

The County Recorder was merely a passive agent in accepting and maintaining

the lien filing.  Cf. Church of Human Potential, Inc. v. Vorsky, 636 F. Supp. 93, 97

(D.N.J. 1986) ("Indeed, it would be unreasonable to conclude that the mere filing

of a federal tax lien in a state office constitutes state action attributable to the

federal official responsible for its origination.").

Moreover, "the Supreme Court has rejected the argument 'that a private party's mere invocation of state legal procedures constitutes joint participation or conspiracy with state officials satisfying the § 1983 requirement of action under color of law.'" Miller v. Compton, 122 F.3d 1094, 1098 (8th Cir. 1997) (quoting Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 939 n.21 (1982)). See also Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 166 (1978) (holding that warehouseman's private sale of items stored with him under self-help provision of New York U.C.C. was not a state action although state acquiesced to this private action).

### d.    Conclusion

First, the possibility of a future foreclosure and sheriff's sale is not pled and is speculative.  Plaintiffs admit that the Dakota County Sheriff, to this point, has had no participation in the process.  See Goldberg, 12 F. Supp. 2d. at 823 (holding "that there is no state action inherent in the possible future state court enforcement of a private property agreement").  Second, the possible sheriff's sale has no relation to the alleged due process violation at issue – lack of notice for the fee schedule.  Third, such action would still not make Overlook a state actor, particularly when Plaintiffs have not alleged that the applicable statute is

18

unconstitutional.  Cf. Northrip v. Fed. Nat'l Mortgage Ass'n, 527 F.2d 23, 28-29

(6th Cir. 1975) (rejecting finding state action merely because mortgage holder

utilized sheriff's sale after conducting foreclosure by advertisement).  See also

Vail v. Derwinski, 946 F.2d 589, 593 n.9 (8th Cir. 1991) ("Most state courts

considering due process challenges to non-judicial foreclosure statutes have

upheld the procedure on the ground that there is no state action.") (citations

omitted), amended in other part by 956 F.2d 812 (8th Cir. 1992).

Finally, as previously noted, merely filing a lien is insufficient to make

Overlook a state actor.

### D.    Cross Motion and Attorney Fees

Because the Court has granted Defendant's Motion to Dismiss, Plaintiffs'

Motion for Judgment on the Pleadings is denied.

"A federal district court has the discretionary power to decline jurisdiction

where it has 'dismissed all claims over which it has original jurisdiction.'"

Johnson v. City of Shorewood, Minn., 360 F.3d 810, 819 (8th Cir. 2004) (quoting 28

U.S.C. § 1367(c)(3)). "The Supreme Court has noted that 'in the usual case in

which all federal-law claims are eliminated before trial, the balance of factors to

be considered under the pendent jurisdiction doctrine . . . will point toward

declining to exercise jurisdiction over the remaining state-law claims.'" Id. (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n. 7 (1988)).  The Court concludes that, at this early stage in the litigation, the elimination of Plaintiffs' only federal claim should result in remand to state court.  Judicial economy, convenience, fairness, and comity all way in favor of remand.

Overlook seeks attorney fees under 42 U.S.C. § 1988(b).  However, Overlook has not briefed this issue,  and Plaintiffs have not responded to it.  The issue is not fully before the Court.  If Overlook does seek attorney fees, it must file a separate motion and brief addressing that issue.


Accordingly, based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.  Defendant's Motion to Dismiss [Docket No. 2] is **GRANTED**.  Count Five, Violation of 42 U.S.C. § 1983, is **DISMISSED WITH PREJUDICE**.

2.  Plaintiffs' Motion for Judgment on the Pleadings [Docket No. 14] is **DENIED**.

3.  If Defendant seeks attorney fees pursuant to 42 U.S.C. § 1988 (b), Defendant shall submit a motion for attorney fees, and supporting memorandum, within 30 days of the date of this Order.

4.     This matter is **REMANDED** to the District Court for the First
        Judicial District, Dakota County, Minnesota.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated May 13, 2008                          s / Michael J. Davis
                                            Judge Michael J. Davis
                                            United States District Court